UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-mc-24628-GAYLES/REID

In re Application of

EDUARDO GONZALEZ,

      Applicant,

Pursuant to 28 U.S.C. § 1782
For Judicial Assistance in Obtaining
Evidence for Use in Foreign International
Proceedings.

_____/

## REPORT ON APPLICANT'S MOTIONS FOR
## CIVIL CONTEMPT SANCTIONS AND ATTORNEYS' FEES

Applicant, Eduardo Gonzalez, has filed a Motion for Contempt Sanctions Against Respondent, Verfruco Foods, Inc. and an Application for Attorneys' Fees. [ECF Nos. 109, 110]. Gonzalez contends that Verfruco Foods, Inc., ("Verfruco U.S.") failed to comply with this Court's November 18, 2021, Order Granting Gonzalez's Motion to Compel ("November 18 Order"). [ECF No. 99]. Verfruco U.S., a Florida corporation, filed a response to the motion claiming inability to comply with the November 18 Order because the company's records are stored outside the United States and beyond the subpoena power of this country's courts. [ECF No. 116]. Verfruco U.S. also contends that the Undersigned lacked authority to enter the November 18 Order granting Gonzalez's motion to compel and further challenged the reasonableness of the attorneys' fees and the number of hours Gonzalez claimed were expended to pursue Verfruco's compliance.

After careful consideration of the Motions, the extensive record, and the applicable law, it is **RECOMMENDED** that Gonzalez's Motions be **GRANTED in part and DENIED in part**. For the reasons explained in this Report, Verfruco U.S. should be sanctioned for failure to comply

1

with the November 18 Order and should be ordered to pay a fine of $5,000.00 a day until it complies. Gonzalez should be awarded attorney's fees and costs, however, the amount awarded should be solely for their efforts to obtain Verfruco U.S.'s compliance with the November 18 Order and thereafter.

**<u>BACKGROUND</u>**

This case involves Gonzalez's application for Judicial Assistance filed pursuant to 28 U.S.C. § 1782, seeking financial information from Verfruco U.S., a Florida company. Gonzalez is part owner of the Mexican company, Verfruco Mexico, S. de R.L. de C.V. ("Verfruco Mexico") and believes that Jamie and Victor Sebastian-Mauricio ("the Sebastian-Mauricio Brothers"), who own the majority interest in Verfruco Mexico are attempting to deprive him of the value of his minority ownership interest by transferring assets and cash from Verfruco Mexico to Verfruco U.S. and other related Mexican entities. He stated in the Application his intention to file suit in Mexico regarding his claim but first seeks information from Verfruco U.S. regarding communications and transactions between the U.S. company and the related entities.  Verfruco U.S. sells the avocado pulp products produced and processed by the Mexican entities [ECF No. 63]. According to Gonzalez, the Mexican entities to which Gonzalez avers the Sebastian-Mauricio Brothers siphoned off Verfruco Mexico's assets include Verfruco U.S.[1], Freshcourt, Novafoods, Fresh Innovations, Best Produce[2], and FI Avocados. *Id.*

Verfruco U.S. maintains it is a "small company," handling sales of avocado pulp products with only three employees from an office in Coral Gables, Florida. [ECF Nos. 30 at 13; 32 at 2-3]. Verfruco U.S. contends it is a separate entity from Verfruco Mexico, Freshcourt, Novafoods,

---

[1] Verfruco U.S. is the only one of these entities which is not a Mexican corporation.
[2] Although Best Produce was not one of the entities identified in the initial Application as having discoverable information, Best Produce's relevance was made clear during the corporate representative deposition of Juan Molano, Verfruco U.S.'s Director of Sales and Product Management. *See generally Id.* [63-1].

and FI Avocados, all of which operate in Mexico. [ECF No. 23]. Verfruco U.S. admits that it is a $50-million-a-year operation. [ECF 63-1 at 112:20-113:6].

The dispute is discussed in more detail in the Undersigned's November 18 Order. [ECF No. 99 at 2-7]. Briefly, because Verfruco U.S. has repeatedly refused to comply with this Court's orders requiring it to respond to the subpoenas issued by this Court in which Gonzalez sought documents from Verfruco U.S., in the November 18 Order the Court granted Gonzalez's request to appoint a third-party forensic expert "to access and independently review the two email servers that Verfruco U.S.'s directors, officers, employees, independent contractors, and/or consultants use (the "@freshcourt.com" email server and the "@bestproduce1.com" email server) for any documents responsive to Gonzalez's subpoena and to determine whether any documents or communications have been deleted." [ECF No. 99 at 8]. During a deposition of Verfruco U.S.'s corporate representative Juan Molano, Molano admitted that Verfruco U.S. employees and corporate directors, including the Sebastian-Mauricio Brothers, use either "@freshcourt.com" or "@bestproduce1.com" email domains to correspond concerning business matters. [*Id.* at 16:25–17:4; 171:6–172:9].

The November 18 Order requires the third-party forensic expert to search the email servers for all documents responsive to the subpoena to Verfruco U.S. and turnover those documents to Verfruco U.S. who, in turn, shall produce all non-privileged documents to Gonzalez along with a privilege log listing any privileged items. [ECF No. 99 at 8-9]. The November 18 Order further requires the third-party forensic expert to determine whether any documents or communications have been deleted and, if so, inform all parties and provide a report to the Court. [*Id.*].

Nevertheless, Verfruco U.S. has failed to make the email servers available to the third-party expert as required by the November 18 Order. Verfruco U.S. again contends it should not be

held in contempt. *See generally* [ECF No. 116]. The company claims, despite requesting responsive documents from its Mexican affiliates and their attorneys, it has been rebuffed, and given that Mexican law precludes it from accessing its documents stored on the Mexican server, it cannot comply with this Court's orders. [*Id.* at 10–15]. Further, it argues the Undersigned's November 18 Order constituted an injunction, and is thus an unlawful order because the Undersigned lacks authority to grant injunctive relief. [*Id.* at 9]. Verfruco U.S. also argued there is no basis for Gonzalez to seek attorneys' fees for the entirety of these proceedings, and the fees charged and time expended are excessive. [*Id.* at 6–9].

The Undersigned held a hearing on the Motions. [ECF No. 128]. Though the parties' arguments remained essentially the same during the hearing, Verfruco U.S. did note that while it still has not obtained access to the documents sought on the Mexican servers, over the last number of months it has produced over 4,000 documents, and was still in the process of reviewing another 15,000 documents to determine whether they are responsive.

**<u>DISCUSSION</u>**

Based on Verfruco U.S.'s failure to comply with this Court's discovery orders, specifically the November 18 Order, Verfruco U.S. should be subject to civil contempt sanctions in the form of a daily fine. Further, Verfruco U.S.'s contumacy justifies awarding Gonzalez his reasonable attorney's fees incurred in seeking to compel Verfruco U.S.'s compliance with this Court's discovery orders.

## I.     The November 18 Order Is Not an Injunction

As an initial matter, Verfruco U.S.'s contention that the Court's November 18 Order constitutes a mandatory injunction which exceeded the Undersigned's authority is clearly meritless.

4

Gonzalez's Motion to Compel Forensic Examination, as well as the November 18 Order, never framed any of the relief sought or granted as an injunction. Several of the cases Verfruco U.S. cites to in support of its assertion that the November 18 Order was an injunction are readily distinguishable as those cases dealt with parties specifically requesting injunctive relief. *See G.W. Henssler & Assocs., Ltd. v. Marietta Wealth Mgmt., LLC*, No. 1:17-CV-2188-TCB, 2017 WL 6996372, at *2 (N.D. Ga. Oct. 23, 2017) (dealing with motion for preliminary injunction where movant sought to have the defendant's electronic devices turned over to prevent misappropriation of trade secrets, as well as enjoining the defendant from conducting business with the plaintiff's clients, and from the defendant using the plaintiff's trade secrets or proprietary information); *Redwood Software, Inc. v. Urbanik*, No. 1:12-CV-495 LEK/DRH, 2012 WL 1097317, at *2 (N.D.N.Y. Mar. 20, 2012) (addressing motion for injunctive relief in which the plaintiff seeking to enjoin a former employer working with a direct competitor from relaying certain information to third-parties pending the outcome of arbitration proceedings).

Additionally, orders granting (or denying) motions to compel forensic examinations fall within the pre-trial discovery duties magistrate judges routinely handle. *See, e.g., Health Mgmt. Assocs., Inc. v. Salyer*, No. 14-14337-CIV, 2015 WL 12778793, at *1–2 (S.D. Fla. Aug. 19, 2015) (granting motion to compel forensic examination and ordering the plaintiff to make electronic devices and email account available for inspection); *Measured Wealth Priv. Client Grp., LLC v. Foster*, No. 20-CV-80148, 2021 WL 309033, at *2–3 (S.D. Fla. Jan. 29, 2021) (granting motion to compel forensic examination and ordering a third-party independent expert to conduct the examination); *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687–88 (S.D. Fla. 2012) (same); *Lima v. Lee*, No. 20-82399-CIV, 2021 WL 6197773, at *1–2 (S.D. Fla. Dec. 30, 2021) (same); *Benzion v. Vivint, Inc.*, No. 0:12-CV-61826, 2013 WL 11941586, at *1 (S.D. Fla.

Dec. 10, 2013) (acknowledging the court had previously "ordered a third-party forensic examiner to image the hard drives of the plaintiff's iPhone, computer, and iPad"); *Snider-Hancox v. NCL Bahamas LTD.*, No. 17-20942-CIV, 2019 WL 13020789, at *2 (S.D. Fla. Feb. 8, 2019) (noting the court had compelled the plaintiff to submit electronic devices to an expert for forensic examination).

This authority is not somehow more circumscribed in the context of a 28 U.S.C. § 1782 case. *See, e.g., In re Alianza Fiduciaria S.A.*, No. 13-81002-MC, 2014 WL 12600502, at *1–2 (S.D. Fla. Oct. 28, 2014) (granting motion to compel forensic examination in § 1782 case and noting a third-party independent computer expert would conduct the examination); *Chevron Corp. v. E-Tech Int'l*, No. 10CV1146-IEG (WMC), 2011 WL 13182855, at *2–3 (S.D. Cal. Feb. 11, 2011) (same); *see also In re Pons*, No. 19-23236-MC, 2020 WL 1860908, at *3 (S.D. Fla. Apr. 13, 2020), *aff'd sub nom. Pons v. AMKE Registered Agents, LLC*, 835 F. App'x 465 (11th Cir. 2020) (collecting cases and noting majority of courts have found that in Section 1782 cases, magistrate judges have jurisdiction to rule on discovery motions, and even on the application itself, because in a Section 1782 case there is nothing to be done on the merits); *In re Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN,  2105 WL 3439103, at *3 (D. Nev. May 28, 2015) (collecting cases for proposition that "most courts have found that ruling on a § 1782 motion is a non-dispositive matter within the province of a magistrate judge's authority").

An order qualifies as an injunction if (1) it contains a clearly defined and understandable directive by the court to act or refrain from a particular action; (2) is enforceable through contempt, if disobeyed; and (3) grants some or all of the substantive relief sought in the complaint. *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2005).

The November 18 Order is simply a ruling on a discovery motion and, as all discovery orders, enforceable by civil contempt. Section 1782 proceedings are governed by the discovery rules of the Federal Rules of Civil Procedure. *See In re Clerici*, 481 F.3d 1324, 1335–36 (11th Cir. 2007) (noting that once discovery is authorized in a § 1782 proceeding, the federal rules of civil procedure govern). Crucially, however, the November 18 Order cannot be said to grant some or all of the substantive relief in the "complaint." First, as this is a § 1782 application, there is no complaint. Second, and more importantly, the November 18 Order merely commands Verfruco U.S. to make available certain electronic devices so that discovery in this proceeding may continue. The permission to engage in discovery, granted in the first instance by a district judge, is the substantive relief sought in a § 1782 application (to the extent a Section 1782 application can be said to seek substantive relief at all). *See In re Pons*, 2020 WL 1860908, at *4 (noting that in a § 1782 proceeding there is nothing to be done on the merits because the "underlying litigation rests before a foreign tribunal") (quoting *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179, 1182 (10th Cir. 2013)).

Additionally, Eleventh Circuit authority requires Verfruco U.S. to object to magistrate judge authority at the time of the referral is made, not after the order is entered. In *Weber v. Fink*, a magistrate judge was referred a motion to compel in a § 1782 proceeding. 554 F.3d 1379, 1385 (11th Cir. 2009). After the magistrate judge granted the applicant's motion to compel, the respondents argued "the district court improperly determined the [m]otion to [c]ompel to be a pretrial matter that could be referred to the Magistrate Judge." *Id.* The district judge upheld the magistrate judge's order on the motion to compel, and the respondents appealed. *Id.* at 1382. The Eleventh Circuit Court of Appeals affirmed, noting the respondents "did not object to the referral until after the Magistrate Judge entered his Order … [thus the respondents] waived this challenge

to the referral by failing to timely object." *Id.* at 1385. In so concluding, the appellate court noted that a "party who objects to a reference to a magistrate must make his [or her] objections known either at the time of reference or soon thereafter." *Id.* (quoting *Hill v. Durion Co., Inc.*, 656 F.2d 1208, 1213 (6th Cir. 1981)). Where a party fails to do so, that "party waives his [or her] objection when he [or she] participates in a proceeding before a magistrate and fails to make known his [or her] lack of consent or fails to object to any other procedural defect in the order referring the matter to the magistrate until after the magistrate has' ruled." *Id.*

Here, Verfruco U.S.'s failure to raise any objections to the scope of the district judge's referral order until after the November 18 Order waived any such objections. Thus, the November 18 Order was valid and lawful, and Verfruco U.S. was required to comply with it.

## II.     Verfruco U.S. Cannot Claim Lack of Possession, Custody, or Control Over Its Corporate Documents to Evade Court Orders

Verfruco U.S.'s main reason for non-compliance, that Mexican law prevents it from complying with the November 18 Order, was soundly rejected in *In re Application of Sergeeva*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12862925, at *1 (N.D. Ga. Oct. 13, 2015), *aff'd sub nom. Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194 (11th Cir. 2016). *Sergeeva* dealt with a § 1782 application seeking documents from a United States company affiliated with Bahamian, Swiss, and British Virgin Islands corporations for the purposes of ascertaining the ownership interest in the latter. 2015 WL 12862925, at *1–2. This information was to be used in a Russian divorce proceeding to show marital assets had been siphoned off to offshore accounts owned through these corporations. *Id.* During the litigation, the respondent acknowledged "responsive documents exist with its Bahamian and Swiss affiliates. However, [the respondent] … took the position that it was a neutral third-party who would produce the documents if it had them but having asked its Bahamian and Swiss affiliates for the documents and been rebuffed, [the respondent's] hands were

tied." *Id.* at *4. Specifically, the respondent's affiliates "declined to provide the requested information because to do so might subject the affiliate to sanctions in their respective countries." *Id.* at *5. Ultimately, the court found the respondent had violated numerous court orders compelling it to provide responsive documents. *Id.* at *7.

In rejecting the respondent's argument "that foreign laws prevent it from producing the relevant documents" the court found the respondent had not made reasonable efforts to obtain the documents and that it had waived the argument by failing to timely raise it. *Id.* at *8. Notwithstanding, in addressing the merits of the argument, the court concluded that "even assuming the foreign affiliates might face some speculative penalty … Eleventh Circuit authority forecloses [this] position." *Id.* In reviewing several Eleventh Circuit opinions, the court noted "that 'the inevitability of conflict between laws of different countries d[oes] not excuse one who chooses transnational commercial operation from compliance with United States law.'" *Id.* (quoting *United States v. Hayes*, 722 F.2d 723, 726 (11th Cir. 1984)). Accordingly, the court found "even if Bahamian law would prevent disclosure of the requested documents by the [foreign affiliates], which is in dispute, [the respondent] cannot benefit from a situation that [it itself] created." *Id.* (quotation and citation omitted). As such, the court held the respondent in civil contempt and levied a daily fine against it, as well as awarding the applicant her attorneys' fees. *Id.* at *9–10.

On appeal the Eleventh Circuit affirmed. Pertinently, the Eleventh Circuit rejected the respondent's argument that the trial court could not order it to produce documents located outside of the United States because such production conflicted with foreign law. *Sergeeva*, 834 F.3d. at 1199. The Eleventh Circuit concurred in the trial court's assessment "that § 1782 plainly says the discovery is to be produced pursuant to the Federal Rules of Civil Procedure … [and] the Federal Rules of Civil Procedure authorize extraterritorial document productions." *Id.* at 1200 (internal

quotation marks omitted). Thus, the trial court correctly "concluded that § 1782 authorized it to require that [the respondent] produce documents in its 'possession, custody, or control,' even if such documents are in the possession of one of the Bahamian … companies." *Id.*

The Eleventh Circuit noted that "the District Court applied the correct legal standard…. [when it] broadly construed 'control' for purposes of discovery as 'the legal right to obtain documents requested upon demand' … [and such a right] may be established where affiliated corporate entities … have actually shared responsive information and documents in the normal course of their business dealings." *Id.* at 1201. The Eleventh Circuit rejected the respondent's "argument that 'legal right' … means 'legal control,'" and concluded that control "is not necessarily negated by the fact that a third-party has actual possession of responsive documents." *Id.* n.6 (citation omitted). Noting that the affiliated entities could not properly conduct business "absent the ability to obtain information and documents" from one another, the appellate court agreed there was "significant circumstantial evidence that [the respondent] has 'control' over responsive documents in the physical possession or custody of [its affiliates]." *Id.*

Verfruco U.S.'s attempt to distinguish its case from *Sergeeva*, on the basis that the respondent in *Sergeeva* had "waived" that argument by not raising it earlier in the litigation, is clearly meritless. [ECF No. 116 at 12]. First, the *Sergeeva* court (as well as the Eleventh Circuit on appeal) did in fact directly address the foreign law argument and rejected it. Second, the *Sergeeva* court's reasoning is even more applicable in this case. Here, like the respondent in *Sergeeva*, Verfruco U.S. is a United States corporation that chose a transnational business structure relying on various affiliated entities in Mexico to conduct its business in the United States. And, Verfruco U.S. also chose to store documents and its emails on a server located in Mexico, owned by affiliated Mexican corporate entities, over which it now claims it has no control or legal access.

Civil contempt sanctions are appropriate here because Verfruco U.S. has in essence manufactured its own inability to comply with this Court's—and for that matter any court's—discovery orders. Verfruco U.S.'s creation of a situation in which it contends it cannot feasibly comply with this Court's discovery orders is not a basis for relief from this Court's orders. As such, Verfruco U.S.'s continued contumacy constitutes just cause to hold Verfruco U.S. in civil contempt, and to impose a daily fine against it.

Vefruco U.S. claims it does not have access to its emails and other business documents because it uses the email domains belonging to its Mexican affiliates, stored on a server in Mexico, to conduct its business. Verfruco U.S. avers that "Mexican law forbids the Mexican Companies … from producing to third parties their email servers, the Sebastian Brothers' work devices, and documents." [*Id.* at 11]. In structuring the storage of its business records and emails in such a manner, Verfruco U.S. can seek to excuse compliance with the directives of this country's judiciary. Verfruco U.S. is using "Mexican law" as a sword and shield.

Verfruco U.S., however, contends there are mechanisms in place—namely issuance of letters rogatory[3]—that permit this Court, or a similarly situated court or government agency, to obtain relevant documentation or evidence from Verfruco U.S. In making this argument, Verfruco U.S. implies that for a United States court to have a meaningful ability to order a United States corporation to comply with United States discovery procedures, it must seek the assistance of a foreign court. Congress has given courts the authority to grant an application for judicial assistance if the application complies with the requirements of § 1782 and this Court has already found those requirements were met here. [ECF No. 8, 33, 67].

---

[3] Notably, letters rogatory are time consuming, and even when issued to countries that are signatories to international conventions, such as the Inter-American Conventions on Letters Rogatory and Additional Protocol, reliance on letters rogatory would significantly delay any domestic proceedings.

For a party to be held in civil contempt for failure to comply with a court order, the party seeking contempt must establish: "(1) the allegedly violated order was valid and lawful; (2) the order was clear and unambiguous, and (3) the alleged violator could comply with the order." *United States v. Mayer*, No. 20-10231, 2022 WL 203338, at *1 (11th Cir. Jan. 24, 2022) (quoting *Ga. Power Co. v. N.L.R.B.*, 484 F.3d 1288, 1291 (11th Cir. 2007)). The movant must establish the alleged contumacy by clear and convincing evidence. *Id.*

Relevant to contumacy, Gonzalez noted Juan Molano, Verfruco U.S.'s corporate representative, made a number of statements during his deposition concerning the process he undertook when in need of documents from Verfruco U.S.'s Mexican affiliates. Specifically, Gonzalez contends Molano admitted that "as a matter of course, [Verfruco U.S.] requests and obtains information from the Mexican entities to conduct its business." [*Id.*]. Verfruco U.S. opposes this argument by stating "Molano's testimony had nothing to do with the email servers or documents Gonzalez seeks … [rather] Molano testified to attending weekly conference calls in which *information only* is verbally exchanged … [and that] Molano never testified that Verfruco US can request and obtain from the Mexican Companies the documents it has been ordered to produce." [ECF No. 116 at 14]. During his deposition Molano did testify about obtaining verbal information during conference calls. A simple reading of the deposition transcript, however, shows that is not all he testified to.

When asked if he had ever turned over documents to government agencies such as the Food and Drug Administration ("FDA"), Mr. Molano testified he had. [ECF No. 108-1 at 75:8–16]. Molano stated the FDA audits would require documents such as "bill[s] of lading, invoice[s], a phytosanitary certificate, and any other customs information that would have gone for that product to be imported." [*Id.* at 78:3–25; 79:1–2]. Importantly, Molano noted to get these documents he

will "usually ask for the records … [from] somebody in Mexico … somebody in quality." [*Id.* at

79:3–10]. As to the exact process of obtaining the documents, Molano testified:

> Q: Okay. So FDA calls you. They ask you, "Hey, we're going to review a bill of
> lading. We're going to review invoices. We're going to review other customer
> information in a shipment," yes?
> A: Yes.
> Q: And you say, "Hey, I don't have all this information," yes or no?
> A: They give you a time when they're going to come and see you, and I gather the
> information for them.
> Q: And you go and get it from Mexico?
> A: Yes.
> Q: So you call Mexico or you email them and you say –
> A: Yes.
> Q: -- send me these documents?
> A: Correct.
> Q: Despite that this relates to exports to Verfruco Foods, Mexico has them?
> A: Yes.
> Q: The information that the FDA was asking for, was it public or not?
> A: I don't think so, no.
> Q: But Mexico gave it to you?
> A: Yes.
> Q: Who do you call in Mexico to get all this information that you so kindly provide
> to the FDA?
> A: To the quality department.
> Q: Who?
> A: Who in the quality department?
> Q: Yes.
> A: There's Mitzy Molina, she's in charge of the quality department.
> Q: That's the only person you talk to in Mexico?
> A: As far as the quality, yes.
> Q: As far as FDA audits?
> A: Yes.
> Q: And she gives you the documents that you need?
> A: Yes.
> Q: And what is her official role?
> A: She is, I think, quality manager.
> Q: At?
> A: At Fresh Court.

[*Id.* 79:11–20; 80:1–12, 24–25; 81:1–3; 82:11–25; 83:1–6]. When asked why the Mexican

affiliates could not produce documents subject to the subpoena because it would supposedly

violate Mexican law, but could to respond to an FDA inquiry, Molano testified he did not know.

[*Id.* at 81:4–25; 82:1–10]. Additionally, Molano acknowledged he could receive customer invoices from the Mexican affiliates as well, if a customer requested it. [*Id.* at 83:9–25; 84:1].

Molano's testimony confirms that Verfruco U.S. obtains documents from the Mexican affiliates in the regular course of business. This is sufficient to show Verfruco U.S. has "control" of its documents for discovery purposes under *Sergeeva*'s liberal interpretation of "control" and can comply with this Court's Order.

## A.  Verfruco U.S.'s "Control" Over Entities who may Possess Relevant Discovery

The last major area of contention regarding whether Verfruco U.S. is able to comply with this Court's November 18 Order involves whether certain of the Mexican Affiliates, or Verfruco U.S.'s various self-designated "third-party consultants" are rightfully subject to the subpoena. This inquiry ultimately comes down to whether Verfruco U.S. has "control" over the documents these entities and individuals possess such that a finding of control is reasonable.

*Sergeeva* makes clear that under Section 1782 "discovery is to be produced pursuant to the Federal Rules of Civil Procedure." 834 F.3d at 1198. Rule 45 provides that parties subject to subpoena must "produce designated documents, electronically stored information, or tangible things in [their] possession, custody, or control…." Fed. R. Civ. P. 45(a)(1)(A)(iii). For discovery purposes, "control" has been broadly construed as "the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653–54 (11th Cir. 1984). "Under this principle of broad construction, 'discovery can be sought from one corporation regarding materials that are in the physical possession of another, affiliated corporation….' [a]ccordingly, '[c]ourts have found control by a parent corporation over documents held by its subsidiary, by a subsidiary corporation over documents held by its parent, and by one sister corporation over documents held by another sister corporation.'" *In re Sergeeva*, No. 113CV03437SCJRGV, 2013 WL 12169388,

at *8 (N.D. Ga. Nov. 22, 2013), *objections overruled*, No. 1:13-CV-3437-LMM-RGV, 2015 WL 12866970 (N.D. Ga. Feb. 6, 2015).

As to "control" over employees or independent contractors, it is clear that corporations have the right to obtain business communications from current employees and independent contractors. *See Matter of Skanska USA Civ. Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 WL 4953239, at *3 (N.D. Fla. Aug. 5, 2021); *State Farm Mutual Automobile Ins. Co. v. Precious Physical Therapy*, 2020 WL 7056039, at *5 (E. D. Mich. Dec. 2, 2020). Courts have found this is true even when the communications are stored on electronic devices or domains not assigned by that particular employer, including where communications are located on personal devices such as cell phones. *Id.* Thus, a corporate entity "cannot shuck its discovery obligations simply because it did not issue" the personal device or account to an employee or independent contractor. *Id.* at *4. The policy underlying this position is straightforward:

> As a practical matter, if an employer were able to avoid producing business documents by simply maintaining anything potentially discoverable in an employee's personal email account, this could have the potential to incentivize employers to require the use of personal accounts for business purposes or to store business documents in personal accounts. Such evasive measures would cut against the purpose of the federal civil rules that allow for broad discovery and would inhibit the resolution of cases on the merits

*Id.* at *6 (quoting *State Farm Mutual Automobile Ins. Co.*, 2020 WL 7056039, at *5 n.4.

At the outset, it must be noted again that the November 18 Order is not seeking access to these third-parties' private documents. Verfruco U.S. was ordered to produce *its own* documents stored on the server owned by its Mexican affiliates, and documents its employees or independent contractors created while conducting business on Verfruco U.S.'s behalf.

Verfruco U.S. contends the portions of the "November 18 Order that require[s] Verfruco US to make available email servers and devices and produce documents within the exclusive

possession of Best Produce and the independent contractors is invalid" because the Undersigned never determined whether Verfruco U.S. has control over them. [ECF No. 116 at 11]. The Undersigned has thoroughly addressed Verfruco U.S.'s control of its own documents in the possession of its Mexican affiliates. *See* [ECF Nos. 33; 52]. Best Produce's status as one of the Mexican affiliates—a particularly important one given its domain is one of those used by Verfruco U.S.—only became fully apparent during Juan Molano's deposition. *See* [ECF No. 63-1]. Notwithstanding, as one of the Mexican affiliates with whom Verfruco U.S. stores portions of its ESI and documents, the control analysis previously conducted by this Court equally applies to Best Produce. Therefore, just as this Court found "the evidence appears to indicate that [Respondent] shares ownerships and a common relationship with Verfruco Mexico, Freshcourt, FI Avocados, and Novafood, and as a result, has control over documents that may be in the physical possession of these Mexican Companies," the same holds true for Best Produce. [ECF No. 33 at 16].

As to Verfruco U.S.'s relationship to, and control over, the various current "third-party consultants"[4] who work on Verfruco U.S.'s behalf, a sufficient showing has been made that Verfruco U.S. has the requisite control to produce documents from its consultants. First, Verfruco U.S. has failed to provide a sound response as to the proper classification of these "consultants." This is evidenced by the parties' disagreement on the proper characterization of Arturo Mendoza. Gonzalez contends Mendoza is an employee, and as proof show Mendoza has been given the title of Vice President of Sales. Verfruco U.S., however, maintains "that Mendoza is a third-party consultant who was given the title 'Vice President of Sales' to aid him in his work for Verfruco US." [ECF No. 116 at 15]. Although Verfruco U.S.'s classification of Mendoza as a third-party consultant is unconvincing, even if he were merely a third-party consultant, Verfruco U.S. would

---

[4] These current third-party consultants are Arturo Mendoza, Ruben Rodriguez, Adam Cardenas, Albert Rivera, Eduardo Garcia, Gene Lamour, and Integro Accountants. [ECF No. 116 at 13 n.2].

still be required to turn over pertinent documents. *See State Farm Mutual Automobile Ins. Co.*, 2020 WL 7056039, at *6 (noting "[c]ourts have repeatedly found that employers have control over their employees and can be required to produce documents in their employees' possession" … and as such ordered the defendant to ask its employees or independent contractors for responsive documents, and provide "affidavits from each such employee or independent contractor attesting that a reasonable search was made and that all responsive documents located were provided" to the defendants) (internal quotation and citation omitted).

Yet, Verfruco U.S. has failed to produce responsive documents or affidavits from its current independent contractors stating they were unable to locate any such documents. Merely asking these individuals to provide documents is insufficient. If these individuals do not have responsive documents, Verfruco U.S. must produce sworn affidavits to that effect.

In summation, Verfruco U.S. has failed to obey a lawful order of this Court. Verfruco U.S. has not demonstrated it is substantially justified in its failure to comply with the November 18 Order. Consequently, Verfruco U.S.'s contumacy and lack of transparency in this case is worthy of contempt sanctions.

**B. Verfruco U.S. Should be Held in Civil Contempt and be Required to pay a $5,000 Daily Fine**

Verfruco U.S.'s contumacy justifies it being held in civil contempt for failure to obey this Court's discovery orders. Although this fine should not be designed to punish Verfruco U.S., it should be sufficient to coerce Verfruco U.S.'s compliance with this Court's orders. As such, Verfruco U.S. should be assessed a daily fine sufficient to produce compliance with this Court's orders.

Civil contempt includes "those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed

in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994). Civil contempt often employs "a per diem fine imposed for each day a contemnor fails to comply with an affirmative court order… and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Id.* at 829. In determining the appropriate amount of the fine, the Court must "consider the character and magnitude of the harm threatened by the continued contumacy, and the probable effectiveness of any suggested sanction bringing about the result desired." *In re Chase & Sanborn Corp.*, 872 F.2d 397, 400-01 (11th Cir. 1989) (internal citations omitted).

Here, to coerce compliance (or at the least a good faith attempt at compliance) with this Court's orders, Verfruco U.S. should be required to pay a per diem fine of $5,000.00 to be deposited into the Court registry. Given Verfruco U.S.'s annual revenue[5] as a corporation, which Verfruco U.S. does not contest is approximately 50,000,000.00, a $5,000.00 fine is appropriate. To purge itself of the per diem fine, Verfruco U.S. must comply with the requirements listed on page 8 of the Court's November 18 Order.

Verfruco U.S. contends if a daily fine is assessed, it should be limited to $500.00 for no more than a 60-day period. Given the serious lack of transparency and continued refusal to obey this Court's orders when the relevant Eleventh Circuit case law clearly requires it, the Undersigned does not believe $500.00 a day for 60 days would be sufficient to coerce Verfruco U.S.'s compliance. The *Sergeeva* court leveled a fine of $500 per day for 60 days *or* until the applicant

---

[5] Verfruco U.S. contends the Court should not evaluate its annual revenue in determining the appropriate daily fine, but instead should look to the corporation's net worth. [ECF No. 116 at 17–18]. Verfruco U.S. omits from this argument, however, that given the lack of discovery in this case—almost entirely a result of Verfruco U.S.'s contumacy—this Court is unable to ascertain its net worth. As such, this Court is left to determine the appropriate daily fine based upon the record evidence at its disposal.

received the documents she requested *or* the request became moot, noting that sanction of that size would probably compel the Respondent to comply. *Sergeeva*, 2015 WL 12862925, at *9. As the purpose of these contempt sanctions are to compel obedience with this Court's orders, and not merely to punish Verfruco U.S. through a "penalty" that it could stomach, a $5,000.00 per diem fine is necessary.

### III. Gonzalez is Entitled to Reasonable Attorneys' Fees and Costs, but not for the Entire Pendency of Litigation or for Fees Unrelated to Seeking to Compel Compliance With this Court's Orders

Fed. R. Civ. P. 37 permits courts to sanction parties that fail to obey lawful discovery orders. "One of the sanctions a district court may impose under Rule 37 is … [to] penalize uncooperative attorneys or parties … by requiring the payment of reasonable expenses, including attorney's fees, caused by the failure." *Serra Chevrolet v. General Motors Corp.*, 446 F.3d 1137, 1147 (11th Cir. 2006) (internal quotation marks omitted). Even where fees are appropriate, however, "[c]ourts are not authorized to be generous with the money of others, and it is as much the duty of courts to see that excessive fees and expenses are not awarded as it is to see that an adequate amount in awarded." *American Civil Liberties Union v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999).

Presently, Gonzalez is seeking the entirety of his attorneys' fees incurred in this case. Although Gonzalez is entitled to an award of attorneys' fees, as addressed below, there is no basis to support an award of all of his attorneys' fees. Under Rule 37, Gonzalez is entitled to an award of reasonable attorneys' fees incurred because of Verfruco U.S.'s failure to comply with this Court's discovery orders. *See* Fed. R. Civ. P. 37(b)(2)(C). The start of Verfruco U.S.'s contumacy, therefore, serves as the line of demarcation for when Gonzalez can collect his reasonable attorneys' fees. As addressed above, Verfruco U.S. has done its utmost to avoid compliance with the issued subpoenas.

Yet, that does not mean the entirety of this avoidance constitutes the flagrant disregard of this Court's discovery orders such that attorneys' fees are appropriate under Rule 37. Admittedly, the exact date on which Verfruco U.S.'s conduct reached the level that Rule 37 attorneys' fees sanctions became appropriate, is somewhat of a moving target. Even as late as Gonzalez filing his Motion to Compel Forensic Examination, there was certain ambiguity—in part, because of the parties' inability to effectively communicate—about exactly what Verfruco U.S. was required to produce. As of this Court's November 18 Order, however, that ambiguity ceased to exist. This Court made it exceedingly clear that Verfruco U.S. was to produce the email servers it used. Consequently, November 18, 2021, onward is an appropriate timeframe for which Gonzalez may seek fees.

Importantly, even during this timeframe, Gonzalez should be permitted to recoup only fees expended in seeking to corral Verfruco U.S. into compliance with the November 18 Order. As of the time of this Report, the various exhibits Gonzalez has filed in support of his Motion for Attorney's Fees, and in other motions incorporated by reference in the motion, which contain a breakdown of the time Gonzalez's attorneys have expended, is extraordinarily broad. *See, e.g.,* [ECF No. 109-1]. The breadth of this supporting documentation makes it difficult for this Court to accurately decipher which billing entries correspond with enforcement of the November 18 Order. As such, Gonzalez should be permitted to refile another motion for attorneys' fees, restricted, however, to entries dated November 18, 2021, onward, which relate *solely* to work done as a result of Verfruco U.S.'s discovery violations.

## **CONCLUSION**

For the foregoing reasons, it is **RECOMMENDED** Gonzalez's Motion for Contempt Sanctions [ECF No. 110], should be **GRANTED**, and Verfruco U.S. should be required to pay a $5,000.00 per diem fine into the Court registry, until it purges its contumacy through compliance

with this Court's November 18 Order. Additionally, although Gonzalez is entitled to attorneys' fees, his current request for attorneys' fees is overly broad, and as presently constructed, cannot be appropriately narrowed by the Court, and as such his Motion for Attorney's Fees [ECF No. 109], should be **DENIED**. Gonzalez, however, should be permitted to file another motion for attorneys' fees that complies with the requirements detailed above, so that this Court may accurately determine an appropriate fee award.

Objections to this Report may be filed with the district judge within fourteen days of receipt of a copy of the Report. Failure to timely file objections will bar a *de novo* determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191-92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 5th day of August, 2022.


LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE


cc:     **United States District Judge Darrin P. Gayles;**

        **All Counsel of Record**